

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00111-CV

| | | |
|---|---|---|
| In the Interest of Y.F.J. and S.E.J., Children | § | From the 323rd District Court |
| | § | of Tarrant County (323-94395J-11) |
| | § | November 29, 2012 |
| | § | Per Curiam |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00111-CV

IN THE INTEREST OF Y.F.J. AND
S.E.J., CHILDREN

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant T.J. (Father) appeals the trial court's judgment terminating his parental rights to his children, Y.F.J. and S.E.J.[2]  Father's court-appointed counsel has filed a motion to withdraw and an *Anders* brief in support stating that after diligently reviewing the record, he believes that any appeal by Father would be frivolous.  *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967).

---

[1]*See* Tex. R. App. P. 47.4.

[2]We use aliases for the children throughout this opinion.  *See* Tex. R. App. P. 9.8(b)(2).

Although given notice and an opportunity to file a pro se brief, Father did not do so.  We affirm.

**Background Facts**

J.K. (Mother) and Father had a prior relationship but are no longer together.  When Texas Department of Protective and Family Services (DFPS) became involved in 2011, Father was married to K.T. and Mother had another boyfriend.  Father served a four-year sentence from 2003 to 2007 for involuntary manslaughter and was sentenced to three years' imprisonment beginning in March 2011 for violence against the family.

On April 1, 2011, DFPS received a referral alleging neglectful supervision of Y.F.J. and S.E.J.  On April 5, 2011, DPFS caseworker Kimberly Russell confronted Mother and her boyfriend at Mother's residence in Fort Worth about heroin use.  At first Mother denied the drug use, but after Russell told Mother she would have to take a drug test, Mother admitted to using heroin.  Mother signed an Acknowledgment of Substance Abuse form in which she admitted to using heroin the day before and during the months preceding the referral.  Mother was placed in the Nexus Drug Treatment Program.  Mother left the facility early in violation of the required safety plan.

Russell could not find any family members on either side who could take the children so they were placed in foster care.  In June 2011, a new DFPS caseworker, Concepcion Martinez, sent a service plan to Father in prison.  Martinez testified that she was concerned about the relationship between Father

3

and the children because the children stated they were afraid of Father's violence towards Mother.

DFPS moved for termination as to both parents because DFPS determined that the children would be in great danger if left with Mother. After a bench trial, the trial court found that Mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their well-being; had engaged in conduct or knowingly placed the children with persons who had engaged in conduct which endangered their well-being; and had constructively abandoned them. The trial court also found that Father had knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their well-being; had engaged in conduct or knowingly placed the children with persons who had engaged in conduct which endangered their well-being; and had knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition. The trial court found that termination of both Mother's and Father's parental rights was in the children's best interest. Father appealed.[3]

### Standard of Review

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any

---

[3]Mother did not appeal the termination of her parental rights and is not a party to this appeal.

property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re R.R.*, 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (West Supp. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.T.*, 34 S.W.3d 625, 629 (Tex. App.—Fort Worth 2000, pet. denied).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001; *see also* § 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief

5

or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

## Discussion

Father's court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion. In the motion, counsel avers that he has conducted a professional evaluation of the record and, after a thorough review of the applicable law, has reached the conclusion that there are no arguable grounds to be advanced to support an appeal of this cause and that the appeal is frivolous.

Counsel's brief and motion meet the requirements of *Anders* by presenting a professional evaluation of the record demonstrating why there are no reversible grounds on appeal and referencing any grounds that might arguably support the appeal. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *Mays v. State*, 904 S.W.2d 920, 922–23 (Tex. App.—Fort Worth 1995, no pet.). This court has previously held that *Anders* procedures apply in parental rights termination cases when DFPS has moved for termination. *See In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, no pet.). Father was given the opportunity to file a pro se brief on his own behalf, but he did not do so.

In our duties as a reviewing court, we must conduct an independent evaluation of the record to determine whether counsel is correct in determining that the appeal is frivolous. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays*, 904 S.W.2d at 923. Only then may we grant counsel's motion to withdraw. *See Penson v. Ohio*, 488 U.S. 75, 82–83, 109 S. Ct. 346, 351 (1988).

In his duty to his client, Father's attorney offers two areas in which he sought to find error. The two areas include: whether under section 161.001(D), (E), and (Q) of the Texas Family Code the evidentiary grounds presented at trial were factually and legally sufficient to support termination; and whether the termination was in the best interest of the children under section 161.001(2) of the Texas Family Code. Father was incarcerated from March 2003 to March 2007, November 2009 to December 2009, and June 2010 to the time of trial, with a projected release date of June 2013.[4] At the time of trial on February 21, 2012, Y.F.J. was twelve years old and S.E.J. was nine years old. During the children's lives, Father has spent over seven years in jail. Father became eligible for parole in October 2010, but had not been released on parole by the time of trial.

We agree with Father's attorney that there are no arguable grounds for an appeal because the evidence shows that Father's continued criminality has

---

[4]Father's criminal history includes intoxicated manslaughter and continuous family violence against the family. In 2009, he was charged with causing bodily injury to his wife, K.T., by striking her head with his hand, forcing her to the ground, and choking her.

contributed to the dangerous environment in which the children lived, thereby meeting the section 161.001(E) grounds for termination. *See* Tex. Fam. Code § 161.001(E); *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (observing that father's incarceration affected his ability to ensure that his child was properly taken care of, prevented him from finding better living conditions or providing financial support for the child, and indicated a course of conduct that was endangering to his child). Father repeatedly committed criminal acts that subjected him to the possibility of incarceration. While imprisonment alone is not a basis to terminate parental rights, it is an appropriate factor to consider. *See In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.). Each time Father was jailed, he was absent from his children's lives and unable to provide a home or support, which negatively impacted the children's living environment and well-being. *See id.*; *In re D.M.*, 58 S.W.3d 801, 812–13 (Tex. App.—Fort Worth 2001, no pet.) (noting that mother's frequent incarcerations affected her ability to properly care for her children); *M.R.*, 243 S.W.3d at 819; *In re C.L.C.*, 119 S.W.3d 382, 393 (Tex. App.—Tyler 2003, no pet.) (holding that it is sufficient that the parent was aware of the potential for danger to the child and disregarded that risk). The children were not bonded with Father and have not expressed a desire to reunite with him. *See In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that the creation of an "emotional vacuum" in the child's life by being absent for more than twelve months due to incarceration was evidence of endangering the

8

child's emotional well-being); *In re J.N.R.*, 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (affirming the termination of father's parental rights based in part on evidence that father continued to engage in the criminal activity that resulted in his incarceration even after knowing his parental rights were in jeopardy).

We have carefully reviewed the appellate record and Father's appellate counsel's brief. We agree with his appellate counsel that the appeal is wholly frivolous and without merit. We find nothing in the record that might arguably support the appeal. *See In re J.T.*, No. 02-10-00284, 2011 WL 856927, at *1 (Tex. App.—Fort Worth, Mar. 10, 2011, no pet.) (mem. op.) (citing *Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005)). Therefore, we grant Father's appellate counsel's motion to withdraw.

## Conclusion

Having granted the motion to withdraw by Father's counsel, we affirm the trial court's judgment terminating Father's parental rights to Y.F.J. and S.E.J.

PER CURIAM

PANEL: GABRIEL, WALKER, and MCCOY, JJ.

WALKER, J., concurs without opinion.

DELIVERED: November 29, 2012